AMERICAN ARBITRATION ASSOCIATION

Marie Gerda Jean
    Claimant

Vs.                                     Case No: 33 2013, 000351

La Port Charlotte LLC, DBA
Signature Healthcare,
    Respondent

## FINAL CONCLUSION AND AWARD

BEFORE:
Barnett Q. Brooks, Arbitrator

Having entered judgment against the Respondent as to discriminatory terms, conditions, discipline and termination, AND upon consideration of Claimant's Motion for Attorney's Fees and Costs, AND upon Respondent's answer thereto; the Arbitrator hereby issues the following Final Relief:

Within fifteen days of receipt of this Final Conclusion and Award, Respondent shall

1. Rehire Claimant in the position she held on September 7, 2010 at a wage rate equal to the rate she was receiving on that date or the current rate of the highest paid therapist at Claimant's work location, whichever is higher. In the event that Respondent does not rehire Claimant, within 15 days as directed, the Respondent shall be charged the daily rate of said wage amount plus 5% annual interest prorated as necessary until Claimant is rehired.
2. Pay Claimant a gross amount that nets to $8,000.00 after payment of all Federal taxes and any other required deductions.
3. Pay Claimant the total amount of $12,590.90 in Attorney's fees that shall be paid directly to Attorney Michael T. Robertson per his Fee Lien and Motion that are hereby granted, and pay $2,642.20 in costs directly to the Claimant.
4. Bear any other costs associated with this matter, and
5. Ensure that the Claimant suffers no future retaliation for having brought this claim against Respondent.

All issues in this matter not specifically addressed are resolved considering the Arbitrator's Opinion and Interim Award issued on September 3rd 2015 and this Final Conclusion and Award.

This Matter shall be deemed closed.

It is so ORDERED, this 3rd day of October 2015

Signed _____
Barnett Q. Brooks Esq.
Arbitrator

Cc: CorbettB@adr.org

EXHIBIT A

1

AMERICAN ARBITRATION ASSOCIATION
EMPLOYMENT ARBITRATION TRIBUNAL

Marie Gerda Jean
Claimant

Vs.

Case No: 332013000351

La Port Charlotte LLC, DBA
Signature Healthcare,
Respondent

OPINION AND INTERIM AWARD

BEFORE:

Barnett Q. Brooks, Arbitrator

FINAL HEARING

This matter came to Hearing on February 19-20 and May 25, 2015.

STATEMENT OF ISSUES

Claimant alleged that she was discriminated against based on her race (Black), national origin (Haitian) and religion (Jehovah's Witness).

By an earlier order the Arbitrator determined that Claimant was precluded from pursuing her claim of religious discrimination and that claim would not be considered. Therefore it is not addressed in this award.

1

As to the Claimant's charge of discrimination based on her national origin, the Arbitrator rules against Claimant and in favor of Respondent. Claimant simply presented no facts to support that claim.

As to Claimant's charge of discrimination based on her race as to terms and conditions of her employment, the Arbitrator rules in favor of the Claimant for the reasons stated below:

## ARBITRATION AGREEMENT

The Arbitration Agreement between the parties, executed and dated on March 22, 2009, states in pertinent part as follows:

(1) ...The arbitrator and not a court shall decide whether a dispute is arbitratable

(2) .That the decision and award of the arbitrator shall be final, binding, and enforceable in the courts.

(3) This dispute resolution agreement covers all matters directly or indirectly related to your termination of employment by the company, including, but not limited to, alleged violations of Title VII and any and all claims under federal, state, and local laws...

(5) The arbitrator shall have the authority to award the full range of remedies that could be awarded by a court setting in the applicable jurisdiction and applying relevant law including, without limitation and if applicable, an award of attorney's fees and costs.

## LEGAL STANDARD

McDonald Douglas v. Green sets forth a burden shifting analysis that applies to Claimants allegations of discrimination. As Respondent correctly notes, that analysis first requires that Claimant establish a prima facie case by showing, by a preponderance of evidence, that (1) she belongs to a protected class; (2) she was qualified to do her job; (3) she was subjected to an adverse employment action and, (4) she was treated less favorably than a similarly situated employee outside of her protected class. Respondent's "RPF" para 57. Respondent must then articulate a legitimate, non-discriminatory reason for the challenged action after which Claimant must then show that the Respondent's reason was a pretext for unlawful discrimination. Ibid

Respondent does not dispute that Claimant is black and was qualified to perform her job. RFF para 58

Respondent does dispute that Claimant has proved that she was subjected to an adverse employment action and that Respondent treated any similarly situated employee outside of Claimants protected class more favorably. RPFs paragraph 58

Based on the Arbitrator's findings of fact it is his finding that Claimant did suffer an adverse employment action, was treated less favorably than white comparators, Ms. Allison Malone and June West, and does present sufficient evidence to establish a prima facie case of discrimination based on race as to terms and conditions of employment.

3

My findings of fact, conclusions of law and as such the ultimate award are based on my credibility determinations that I find in favor of Claimant and against Respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

1. Respondent La Port Charlotte, LLC d|b|a Signature Health Care of Port Charlotte, ("Respondent") operates a 164 bed skilled nursing facility in Port Charlotte, Florida providing vocational and occupational therapy services to its residents. Vol. I -283- 84
2. Claimant was hired by Respondent on April 22nd, 2009 s an Occupational Therapist. Claimant is Black.
3. Monika Weitzel, supervised all rehab Department employees which included therapists, assistants, and technicians including Claimant Marie Gerda Jean, (" Claimant" or " Gerda Jean") Vol I -17-18, 25-26, 116-117, 286.
4. Alec Weitzel was facility administrator and Monika Weitzel was his wife
5. Claimant worked as an occupational therapist from April 2009 until September 7th, 2010, when she was told with respect to a progress report for Patient X, "complete the progress report or go home". Vol I at 17-18, 26, 112, 116-117, 288, 292-293; Vol II at 332-333.
6. While Claimant interpreted the comment " complete the progress note or go home" as a statement of termination of her employment, Respondent contends that termination was not the intent. Vol II at 430.

4

7. Respondent initiated paperwork terminating claimant's employment effective the next day, September 8th, 2010 pursuant to what it say is its " no call" policy after she did not appear for work that day as scheduled. Vol II at 298-299, Ex. R-6

8. Ms. Weitzel testified that while she would have disciplined Claimant for her refusal to complete the note, she would not have terminated her. Vol II at 484.

9. Co- employee Allison Malone was employed by Respondent as a speech therapist during Claimant's employment. Vol I at 32, 180; Vol II at 466.

10. Ms. Malone looks white and Respondent's witness Ms. Canahan testified that Ms. Malone is " half-white". Vol II at 360

11. Ms. Malone was disciplined for a variety of infractions during her employment. According to Ms. Weitzel under Respondent's discipline policy, Ms. Malone received discipline from a verbal to a written warning for similar offenses. Vol II at 465-479. She also had a verbal warning for attendance. Vol II at 497-498.

12. Claimant, as an occupational therapist, was responsible for patient care, including the development of care plans. Vol I at 19-22, 135, 142. R-3

13. Respondent maintained patient notes, referred to as progress notes, for each patient. Vol I at 30-31

14. Weekly progress notes provided a retrospective review of the patient's progress. They were updated and completed by the registered therapist. Vol I at 30-31, 281.

15. Progress notes had to be completed in a timely manner for patient care, insurance and compliance billing purposes. Vol I at 135

16. Donna Lechleidner, respondent's rehab technician from May 2003 until the summer of 2014 was responsible for ensuring that all progress notes were submitted timely. Vol I at 46-48, 290, 318-319

17. Donna frequently delivered messages to all employees on behalf of Ms. Weitzel. Vol. I at 233-236, Vol II at 323-324, 402

18. Ms. Weitzel considered Claimant good at her job. Vol. I at 144, Vol II at 426-427

19. In late August of 2010, Claimant was assigned to care for Patient X and did complete the patient's progress notes on or about August 30th, 2010. Vol I at 59, 164

20. Claimant was not scheduled to work between September 1st and September 6th, 2010. During that period Patient X was treated by co-employee June West, who is white. Vol I at 59-61, 170, 231.

21. Claimant returned to work on September 7th, 2010 and Patient X was assigned to her for that day. Vol I at 62, 239, 329.

22. Claimant planned to see Patient X on the afternoon of September 7th, 2010. Vol I at 62, 167, 171-173; Vol II at 408

23. Patient X was an HMO patient, and a weekly progress note had to be completed each week related to services provided to her. Vol I at 165-166, 289-290, Vol II at 365-366

24. The weekly progress note for Patient X was due by noon on September 7th, 2010. Vol I at 165-166, 289-290; Vol II at 265-366, 377.

25. On September 7th, 2010, Donna asked Ms. West to complete Patient X's weekly progress note but Ms. West refused saying that she did not feel qualified to do so. Vol I at 238-239, 292; Vol II at 328-330

26. Donna shared Ms. West's comments to Ms. Weitzel who instructed Donna to ask Claimant to write the note but Claimant also refused. Vol I at 62-63, 169-171, 174, 240, 291-292; Vol II at 329-330

27. Ms. Weitzel then told Donna, " if she (Claimant) does not want to do her job then she might as well go home" Vol I at 292-293

6

28. Donna then told Claimant that Ms. Weitzel said "complete the progress note or go home" Vol I at 69; Vol II at 332-333

29. Ms. Weitzel did not insist that Ms. West complete the report or go home.

30. Ms. West and Donna Lechliedner, are white. Vol I at 234-300; Vol II at 419-420

31. On September 7th, 2010 Monika Weitzel processed paperwork terminating complainant effective September 8th, 2010 stating in pertinent part: " Stakeholder left without notice or checking with immediate supervisor..." C-10 000063

32. On September 8th, 2010 Claimant sent a letter to Facility Administrator Alec Weitzel complaining about her treatment. C-15 000082

33. On September 14th, 2010 a complaint from Claimant was received by Tracy Harrison VP HR who conducted an internal investigation on behalf of respondent C-15 000082

34. On September 20th, 2010 Ms. Harrison had concluded her internal investigation of allegations made by Claimant which included claims of fraud and discrimination. C-15 000081-000082

35. Ms. Harrison concluded that Claimant's allegations of discrimination and fraud were unsubstantiated. C-15 000082

36. In her investigative summary and recommendation, Ms. Harrison concluded that "It was substantiated that Monika (Weitzel) did send the Rehab Technician to instruct Claimant to write the note or go home. Ms. Harrison concluded that "obviously" this was not the appropriate way to address a staff member and "we recommend that Monika receive a coaching/ counseling and training regarding staff performance and addressing staff performance issues." . C-15 000082

37. Ms. Harrison found that Claimant had said that she was planning to file an EEOC claim. C-15 000082

## Conclusions of Law

The Claimant states that she was subjected to an adverse employment action by having been constantly harassed, subjected to different terms and conditions of employment, and terminated based on her race (black).

1. Claimant has presented no evidence and the Arbitrator finds as a matter of law that Claimant suffered no constant harassment as alleged.

2. In order to establish a case of discrimination in terms and conditions of employment a Claimant must typically prove (1) she belongs to a protected class, (2) she was suspect to an adverse job action, (3) the employer treated similarly situated employees outside her protected class more favorably, and (4) she was qualified to do the job. Knight v. Baptist FNC. 330 f 3d 1313, 1316 (11th cer 2003)

    a. There appears to be no dispute that Claimant is black, and that she was qualified to do her job.

    b. Respondent contends that Claimant was not terminated and that she has identified no similarly situated employees outside her protected class more favorably treated than she was. The Arbitrator disagrees.

3. The Arbitrator finds as a matter of law that the Claimant was terminated, has identified a similarly situated employee outside her protected class and as such has established a prima facie case of discriminatory treatment with respect to how Respondent disciplined and terminated Claimant.

    As I indicated at the outset, it must be noted that, I was particularly influenced by what I found to be a lack of credibility of Respondent's witness, Monika Weitzel, who was Claimant's supervisor. I was also swayed by exhibit C-15 at 000081-000083,

8

Respondents internal investigation and its own conclusion about the propriety of Ms. Weitzel's actions with respect to Claimant having to write Patient X's note were, in the Arbitrator's view, decisive and determinative. Those facts, as noted below, also go to pretext.

The internal investigation concluded that Ms. Weitzel's actions violated Respondent's protocol as they were "obviously... not the appropriate way to address a staff member" and recommended that Ms. Weitzel "receive a coaching/ counseling and training..." There were likewise other contradictions in Ms. Weitzel's testimony and declarations submitted by Respondent as evidence. Respondent argues and is certainty correct that if Claimant establishes a prima facie case, Respondent then need only articulate a business related reason for its action. Respondent says, however that Claimant was a no call, no show. In effect Respondent claims that she abandoned her job and did not return after September 7th, 2010.

Respondent therefore further suggests that this matter is one of pretext and Claimant has presented no such evidence. The Arbitrator found as a matter of law that Respondent did articulate what could be a valid business-related reason for Claimant's separation and if believed, would exhonorate Respondent from liability. However, as noted herein, the Arbitrator believes Ms. Weitzel's did intend to terminate Claimant on September 7th, 2010 and Respondent's own exhibit clearly proves the point. Respondent argues that Claimant was terminated on September 8th, 2010, but Respondents internal termination note terminating Claimant effective September 8th, 2010 was actually executed and signed by Ms. Weitzel on September 7th, 2010. This presents a severe credibility problem for Respondent that it in the Arbitrator's view, Respondent did not overcome.

9

The arbitrator finds as a matter of law as to Claimant's allegation of race discrimination in terms and conditions that:

1. The Claimant has presented a prima facie case

2. Respondent has articulated, what it alleges is, its business reason for Claimant's termination (e.g. no call/ no show) and

3. Claimant has shown that Respondent's alleged legitimate reason is pretextual; Respondent's articulated reason is not the actual reason for Claimant's termination which was actually a failure to document Patient X's progress note.

The Arbitrator will now address the prima facie elements of adverse employment action and similarly situated employee(s).

### Adverse Employment Action

As Respondent correctly notes a discharge:

> "requires analysis of the employer's intent which may be inferred not only from words but also from conduct as well as the specific circumstances of the challenged job action". In the instant matter and as Respondent also noted:

> " the intent of Ms. Weitzel is key"

This Arbitrator did not find Ms. Weitzel's testimony credible nor consistent with the written record in this matter.

Although Ms. Weitzel testified that it was not her intent to terminate Claimant when she asked Donna to convey her message to Claimant, there is no dispute that Claimant was told:

"do the job or go home".

More conclusively, on that same day, September 7th, 2010, Ms. Weitzel generated an internal document entitled "Coaching and Counseling session" terminating Claimant's employment effective the very next day. Ms. Weitzel never consulted Claimant to get her side of the story. This contradictory evidence puts into question Ms. Weitzel's testimony as to her intent not to terminate Claimant on September 7th for not completing the note for Patient X as opposed to a no call/ no show on September 8th. Ms. Weitzel's testimony is simply not credible.

Respondent's internal document terminating Claimant effective September 8th 2010 was executed and signed by Ms. Weitzel on Sept 7th 2010. Ms. Weitzel could not have known on September 7th, 2010 if Claimant would come to work the next day. This presents a severe credibility problem for Respondent that it, in the Arbitrator's view, did not overcome.

The Latin phrase, res ipse loquitor, would seem to apply.

Ms. Weitzel intended to, and in fact did, terminate Claimant's employment on September 7th and Claimant thereby meets element (3) adverse employment action of her prima facie case.

### Similarly Situated Employee

In order to establish element (4) of her Prima Facie case, Claimant must show that she was treated less favorably than one or more persons outside of her protected category, which is black.

Respondent contends that Claimant has presented no comparator who was (1) treated better than she was with regard to terms and conditions of employment or (2) who

11

committed the same or similar offenses but was not terminated. The Arbitrator again disagrees.

Respondent discounts co-worker Allison Malone because Ms. Malone is half white. Vol II at 360. Claimant testified that she thought that Ms. Malone was white. Vol I at 33. Co-worker Mabel Cunanan testified that Ms. Malone is half white. Respondent notes in its argument that

> "The Arbitrator has not discovered and the parties have not provided any relevant legal authority for the position that a proper comparator for an aggrieved black individual like Claimant is another employee whose mother is black and father is white " para 72 (argument)

As noted above, Claimant testified that Ms. Malone "looks" white and Ms. Cunanan testified that Ms. Malone is "half white and half black" Vol II at 360.

While Claimant was terminated for patient documentation deficiencies, Ms. Malone had severe documentation deficiencies throughout her employment as noted on her Coaching and Counseling Session reports of August 8th, 2008; April 1st, 2009; June 4th, 2009; July 15th, 2010; and July 22nd, 2010. Ms. Malone however was not terminated for those deficiencies. In addition, while Claimant, who in reality, was terminated for failing to follow Ms. Weitzel's instructions, Ms. Malone also did not comply with her supervisor's instructions as noted on September 13th, 2010, but she was not terminated for that performance issue either. Finally, Ms. Malone did not follow call-in procedure as noted on counseling document dated October 16th, 2008, and was not terminated for that infraction. Ms. Malone, who all parties concede is either half white or looks white, was not terminated for multiple infractions, although Claimant, who is black, was terminated for just a single occurrence. C-7 000029-000041.

As noted by Respondent, there seems to be little if any authority where a court has held that a biracial co-employee may serve as a comparator in a Title VII race discrimination context. However, the Arbitrator does find the case of Perry v. Autozoners, LLC, (948 F. Supp. 2d 788 W.D. KY 2013) as instructive. In that Title VII denial of promotion, race discrimination case, the Court held that the employees were unable to establish race discrimination because the employee who received the promotion instead of the plaintiff was biracial and <u>appeared</u> to be African American. The Court found relevant and persuasive in its analysis that the co-employee comparator "appeared to be African American". In the instant matter, the alleged comparator was " thought to be white". The Arbitrator finds the Perry case and the instant matter analogues and as noted above , in the Arbitrator's opinion, the Perry Case is instructive.

Even assuming, for sake of argument, that Ms. Malone, who looks white, is not a proper comparator, a contention that the Arbitrator rejects both legally and factually, co-employee West is white. Vol I at 234, 300; Vol II at 419-420; R-2C, Vol II at 322, 401. It was undisputed that Ms. West refused to complete the note for Patient X because " she did not feel qualified to complete it". Vol I at 238-239, 292. Ms. West who is white and whom the Arbitrator finds, as a matter of law and fact, is a proper comparator, was not terminated for her refusal to follow the very same instructions given to Claimant, who was terminated. Claimant has established the final element of her prima facie case.

## CONCLUSION AND INTERIM AWARD

Along with her initial demand, Claimant sought relief that included among other things,

" award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of Jean's rights,..."

Based upon all of the above, the Arbitrator enters judgment against the Respondent and in favor of the Claimant with respect to race discrimination as to terms and conditions of discipline and termination, and grants the following relief:

First, Respondent shall rehire Claimant in the position she held on September 7th, 2010;

Second, Respondent shall pay Claimant the net sum of $8,000.00.

Third, Respondent shall comply with the above within 30 days of receipt of this award and,

Finally, Respondent shall ensure that the Claimant suffers no future retaliating treatment.

All issues in this matter not specifically addressed shall be considered hereby resolved.

The Arbitrator shall maintain jurisdiction of this matter for fifteen days from the date of this Interim Award within which time Claimant may submit a Motion for Attorney's Fees and Costs, fully supported by documentation. Upon receipt of Claimant's Motion, Respondent may file a Response within 15 days. The Arbitrator will issue his Final Award and provide Respondent with an additional 15 days thereafter for Respondent to advise the AAA of its full compliance with the Final Award. Upon receipt by the AAA of Respondent's Notice of Compliance with Final Award, this Matter will be deemed closed.

It is so ORDERED, this __3rd__ day of __September__ 2015

Signed _[signature]_

Barnett Q. Brooks Esq.
Arbitrator

Cc: CorbettB@adr.org

14

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See Privacy act statement before completing this form.

Florida Commission On Human Relations and EEOC
State or local Agency, if any

| AGENCY | CHARGE NUMBER |
|---|---|
| [ ] FEPA [X] EEOC | |

**NAME** (Indicate Mr., Ms., Mrs.): Ms. Marie G. Jean
**STREET ADDRESS**: 3450 Roland Drive
**CITY STATE AND ZIP CODE**: Port Charlotte, Fl 33980
**HOME TELEPHONE**: (941) 204-0745
**DATE OF BIRTH**: 01-08-1955

**NAME**: Signature health Care of Port Charlotte
**NUMBER OF EMPLOYEES, MEMBERS**: +200
**TELEPHONE**: (941) 625-3200
**STREET ADDRESS**: 4033 Beaver Lane
**CITY STATE AND ZIP CODE**: Port Charlotte, FL 33952
**COUNTY**: Charlotte

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es)):
[x] RACE  [ ] COLOR  [ ] SEX  [x] RELIGION  [x] NATIONAL ORIGIN
[x] RETALIATION  [ ] AGE  [x] DISABILITY  [ ] OTHER

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST (ADEA/EPA)   LATEST (ALL)
07/29/16
[X] CONTINUING ACTION

**THE PARTICULARS ARE** (If additional space is needed, attach extra sheets):

This charge relates to 510-2010-05699. Please see attached particulars on the attached sheet. I was fired July 29, 2016 while I was asking for ADAAA paperwork for an orthopedic issue.

[x] I want this charge filed with both the EEOC and the State or local Agency if any. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

State of Florida
City of Osprey

I declare under penalty of perjury that the foregoing is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Date: _____ Charging Party _____

KEVIN F. SANDERSON
MY COMMISSION # FF 930292
EXPIRES: October 22, 2019
Bonded Thru Budget Notary Services

Sworn to and subscribed to before the undersigned notary public in and for said jurisdiction this _____ day of _____, 201_.
My commission expires:

Notary Public

EEOC Form 5 modified

# EXHIBIT B

I was subjected to retaliation and harassment during my employment with Signature Healthcare by Alicia Lenfest, the director of Rehab.

I was awarded a Racial Discrimination Award against Signature Healthcare on October 3, 2015 that stipulated to re-hire me at the highest rate pay of their therapist and not to retaliate against me. However, Ms. Lenfest has subjected me to a hostile work environment by constantly and continuously came to me with warnings for me to sign. She was always complained about my work although I was doing exactly what the other therapists were doing. She made it difficult for me to communicate with Nurses about patients. I have been told by my patients Ms. Lenfest also went to talk to all my patients to ask them if I was treating them bad. In addition, one failure to thrive patient refused me as her therapist because I was encouraged her to be more independent. Ms. Lenfest referred the matter to Social Services to investigate me as if I was abusing the patient in some way. When I reported it to Cathryn Shay, the same patient's physical therapist, she was surprised of her reaction and stated that, "this situation happens all the time in the Rehab where a patient preferred a therapist over another and it was never a reason to referred to Social Services for investigations."

On 2/5/16 I sent a letter to Heather Howe, the head of Human Resources, explaining to her how I had been harassed and how Ms. Lenfest was retaliated against me. In that letter I mentioned how Ms. Lenfers was tolerating unethical and illicit billings for Medicare patients. On 2/9/16 Ms. Howe sent 2 people to investigate the allegation of Medicare fraud, but she never got back to me about the fact Ms. Lenfers was making my work environment unbearable. As matter of fact, Ms. Lenfest told all the therapist how I reported their wrong doing to HR, as a result, many of them were no longer talking to me. As matter of fact, that day I did not know the compliance person was in our Department to investigate, so I saw Ms. June West, the COTA, who made the statement that she was upset with someone in our department right now for what they did. Innocently I said "is it me"? She answered: "it could be" It wasn't until about 12 PM when Ms. Lenfest told me that they wanted to talk to me that I realized that Ms. West was really talking about me.

On 2/23/16 another Therapist struck me on my left frontal side with the edge of the industrial door of the Rehab department. I was injured on my left side, from my neck to my hips. I reported it to Karla Brattin, HR in the building, so I can get some care because I was getting worst with pains. She made it sound like it was my fault that happened. When I was leaving her office I turn around and saw her rolling her eyes and made grimaces behind me. In addition, when I brought back the Hospital paper with the instructions she got more upset and started to yell at me on the hallway. She gave me a referral to see the Doctor for workman compensation, Dr. Leroux, and he made the recommendation to assign me only sedentary work. However, Ms. Lefest was giving me more patients than usual to the point that I was getting worst and I had to write Ms. Howe to grant me sick time off to deal with my ordeal. On 2/26/16 I received a bad evaluation performance from Ms. Lefers. When I asked what she means she referred to the time I asked a White CNA to get a patient out of bed for wheelchair positioning and the CNA was not cooperative and I went to talk to her supervisor.

I only cite a few of the bad treatments that I have suffered at Signature Healthcare. I brought them to HR, but nothing was done about it. It seemed that it was their plan to make my life miserable so I can leave the job on my own because they did not want to re-hire me on the first place. They

were so sure I was not going to last due to their plan to make me leave, so Ms. Howe proposed to hire me at the rate of $47.65 per hour supposedly to be the highest Therapist rate per the Arbitrator's Award, but until my sick leave on 3/10/16 I was still getting $43.68 my old rate of 5 years ago despite the fact I wrote HR and Signature Healthcare on 2/9/16 to ask them to comply with Arbitrator's order.

No reason for these actions have been given. I have been discriminated against and retaliated against based on my race (Black), national origin (Haitian) and religion (Jehovah's Witness) in violation of the Civil Rights Act of 1964.

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Marie Jean<br>3450 Roland Drive<br>Port Charlotte, FL 33980 | From: | Miami District Office<br>Miami Tower, 100 S E 2nd Street<br>Suite 1500<br>Miami, FL 33131 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2016-04790 | ROBBY CEDON,<br>Investigator | (305) 808-1881 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

MICHAEL J. FARRELL,
District Director

OCT 25 2016
(Date Mailed)

Enclosures(s)

cc: Respondent's Representative

Tracy Hooks,
CEO
SIGNATURE HEALTHCARE OF PORT CHARLOTTE
4033 Beaver Lane
Port Charlotte, FL 33980

cc: Charging Party's Representative

Kevin F. Sanderson,
Esq.
Kevin F. Sanderson, LL.M.
690 South Tamiami Trail
Osprey, FL 34229

## Arbitration Agreement

In consideration of the company employing you and the mutual promises set forth herein, you and the company and your and its representatives, successors, and assigns agree to the following:

(1) All claims relating to your recruitment, employment with, or termination of employment from the Company shall be deemed waived unless submitted to final and binding arbitration in accordance with the Federal Arbitration Act ("FAA") or, if a court determines the FAA does not apply, by any applicable state arbitration act, in accordance with the rules of the American Health Lawyers Association ("AHLA"). A copy of the AHLA rules is available for review in the office of your Human Resources Director. If AHLA ceases providing dispute resolution services, the arbitration proceeding shall be governed by the rules of the American Arbitration Association. The arbitrator and not a court shall decide whether a dispute is arbitrable, including all claims that fraud or misrepresentation induced the employee to sign this Agreement.

(2) In the event that either the employee or the company seeks relief in a court of competent jurisdiction for a dispute covered by this Agreement, the other party may, at any time within sixty (60) days of the service of the complaint, require the dispute to be arbitrated, and that the decision and award of the arbitrator shall be final, binding, and enforceable in the courts.

(3) This dispute resolution agreement covers all matters directly or indirectly related to your recruitment, employment, or termination of employment by the Company, including, but not limited to, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("PWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws and common law but excluding Worker's Compensation Claims and unemployment benefits.

(4) In the event any portion of this Agreement shall be determined by a court to be invalid, the remainder of this Agreement shall remain in full force and effect, and this provision shall survive such determination.

(5) The arbitrator shall have the authority to award the full range of remedies that could be awarded by a court setting in the applicable jurisdiction and applying relevant law including, without limitation and if applicable, an award of attorney's fees and costs.

(6) This Agreement shall be binding upon your heirs, successors and assigns.

YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. IF SO, TAKE A COPY OF THIS FORM WITH YOU. HOWEVER, YOU WILL NOT BE OFFERED EMPLOYMENT UNTIL THIS FORM IS SIGNED AND RETURNED BY YOU.

PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.

BOTH PARTIES WAIVE TRIAL BY JURY

APPLICANT:
Print Full Name: Gerda L. Jean
Signature: [signature]   Date: 3/22/09

COMMPANY: SHC of Port Charlotte
Print Full Name: MARY J. DAVIS
Signature: Mary J. Davis   Date: 3/22/05

Exhibit C

Updated November 1, 2007